*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. C. M. BASKIN, Minor.

UNPUBLISHED
March 18, 2026
10:01 AM

No. 374097
Wayne Circuit Court
Family Division
LC No. 2024-000868-NA

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

MALDONADO, J. (*dissenting*).

Respondent Shaniqua Baskin contends on appeal that the Department of Health and Human Services (DHHS) failed to make reasonable efforts toward family reunification prior to the trial court terminating her parental rights, including failing to provide her with a case service plan. The majority concludes that respondent waived this issue by entering a no-contest plea to jurisdiction and statutory grounds for termination. I disagree that respondent's plea in this case constituted a waiver of her right to challenge the sufficiency of the DHHS's reunification efforts. Therefore, I respectfully dissent.

## I. WAIVER

"A waiver consists of the intentional relinquishment or abandonment of a known right." *Patel v Patel*, 324 Mich App 631, 634; 922 NW2d 647 (2018). "Magic words are unnecessary to effectuate a valid waiver, but a waiver must be explicit, voluntary, and made in good faith." *In re MJC*, 349 Mich App 42, 49; 27 NW3d 122 (2023), quoting *Patel*, 324 Mich App at 634. A valid waiver may be shown by "express declarations or by declarations that manifest the parties' intent and purpose, or may be an implied waiver, evidenced by a party's decisive, unequivocal conduct reasonably implying the intent to waive." *In re MJC*, 349 Mich App at 49 (quotation marks, citation, and brackets omitted). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *Id.*, quoting *Cadle Co v Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009).

In *In re MJC*, this Court determined that the statutory requirement for the DHHS to provide reasonable efforts to reunify a family is distinct from the statutory requirement that at least one

statutory ground for termination of parental rights be established by clear and convincing evidence. *In re MJC*, 349 Mich App at 54. So in that case, the respondent-father's waiver of his right to contest the statutory grounds for termination did not also waive his right to contest the adequacy of the DHHS's reunification efforts. *Id*. Unlike the majority, I do not find *In re MJC* to be distinguishable from the instant case on this point because just as in *In re MJC* the trial court did not inform respondent that she has the statutory right to reunification services and that she was waiving those services through her no-contest plea. See *id*. at 54.

Because of the importance of the relevant language during the plea colloquy at the July 22, 2024 hearing, I include a lengthy excerpt of the hearing transcript:

> *The Court*: Your attorney has indicated to the Court that you wish to enter a no-contest plea. That means that you are giving up your right to trial . . . I'm just gonna [sic] have a conversation with you; ask you some questions because I need to make sure that you understand what it is you're giving up before I can accept the no-contest plea, and I need to make sure that you are doing this voluntarily.
>
> So first and foremost, you have the right to have a trial before a judge, sitting with or without a jury. And the trial means that Ms. Barash, who's the assistant attorney general, she represents DHHS; she would call witnesses, and then your attorney, Mr. Alex, would have a chance to cross examine any witnesses that she calls. And you would ask questions of those witnesses through your attorney.
>
> Additionally, you have the right to have witnesses come to court to testify on your own behalf, and you have the right to testify on your own behalf.
>
> Ms. Baskin, do you understand that Ms. Barash, the assistant attorney general, has the burden of proving the allegations, by a preponderance of the evidence, for statutory grounds and jurisdiction; and by clear and convincing evidence to terminate parental rights? And that if you enter a no-contest plea today that can later on in the future be used at a hearing to terminate your parental rights. You understand this, Ms. Baskin?
>
> [*Respondent*]: Yes.
>
> *The Court*: Are you making a no-contest plea today, of your own free will, Ms. Baskin?
>
> [*Respondent*]: Yes.

*The Court*: Has anyone promised you anything to make a no-contest plea today?

[*Respondent*]: No.

*The Court*: Has anyone threatened you to make a no-contest plea today?

[*Respondent*]: No.

*The Court*: Okay. And you understand that if the Court takes jurisdiction, after accepting this no-contest plea, and the Court does not terminate your parental rights after a best interest hearing; that the children will be adjudicated. The Court will take jurisdiction over your children and order you to do certain things before your children can be returned to your care. Do you understand that?

[*Respondent*]: Yes.

*The Court*: Okay. Are all parties here satisfied with the Advice of Rights?

[*DHHS Attorney*]: Yes.

[*Respondent's Attorney*]: Satisfied.

[*L-GAL*]: Yes, your Honor.

*The Court*: The Court is, then, going to find that the no-contest plea will be made knowingly and voluntarily. The Court is going to find that there is a—there is a basis for jurisdiction and a statutory basis to terminate parental rights.

But the Court, today, as I said Ms. Baskin, we're not terminating parental rights because the Court doesn't do that until a best interest finding is made. The Court has to hear evidence and testimony about what is in the best interest of these children.

I cannot conclude from this colloquy that the trial court clearly indicated to respondent that she was entitled to reasonable efforts toward reunification—including a case service plan—and that she was relinquishing that statutory right through her plea to jurisdiction and statutory grounds. The only potential reference to reasonable efforts, DHHS services, or a case service plan was the trial court's statement that it may "order [respondent] to do certain things before [her] children can be returned to [her] care." But that statement did not make clear the DHHS's responsibilities to facilitate reunification. Therefore, I would conclude that, just as in *In re MJC*, respondent's no-contest plea in the present case did not amount to an "intentional relinquishment or abandonment of a known right." *Patel*, 324 Mich App at 634. As a result, this issue has not been waived, and

-3-

this Court can consider whether the DHHS failed to make reasonable reunification efforts, such that the trial court erred by terminating respondent's parental rights.[1]

## II. REASONABLE EFFORTS

It is well established that the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Reasonable efforts must be appropriate to address the specific barriers facing the family, so efforts will vary according to circumstance. See *In re Hicks/Brown*, 500 Mich at 85-86. However, reasonable efforts must include creating a case service plan " 'outlining the steps that both [the DHHS] and the parent will take to rectify the issues that led to court involvement and to achieve reunification.' " *In re MJC*, 349 Mich App at 55, quoting *In re Hicks/Brown*, 500 Mich at 85-86.

Generally, to preserve an argument regarding the sufficiency of reasonable reunification efforts, a respondent must object to the services at the time that the efforts are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). However, when the DHHS never creates a case service plan, a respondent never has the opportunity to object, so such a challenge is timely even when made at the termination hearing. See *In re Matamoros*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 371544); slip op at 3-4.

In this case, respondent's trial counsel never challenged the DHHS's reunification efforts. Accordingly, this issue is not preserved and is subject to plain error review. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). "If those three requirements are met, reversal is warranted when the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *In re Boshell/Shelton*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 6 (quotation marks and citation omitted).

In the present case, a careful review of the record compels the conclusion that the trial court plainly erred in terminating respondent's parental rights without the DHHS engaging in reasonable reunification efforts.[2] Indeed, the order terminating respondent's parental rights

---

[1] Additionally, although respondent did not include this issue in her statement of the questions presented on appeal, she did address this issue in her supplemental briefing, which she submitted in response to this Court's order inviting the parties to address the lack of reunification efforts. *In re CCM Baskin Minor*, unpublished order of the Court of Appeals, entered January 6, 2026 (Docket No. 34097). For this reason, I would not conclude that this issue is abandoned.

[2] The DHHS is excused from its reunification requirements in cases involving aggravated circumstances. MCL 712A.19a(2); *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919

indicates: "Reasonable efforts were made to preserve and unify the family to make it possible for the child(ren) to safely return to the child(ren)'s home. Those efforts were unsuccessful." But when the trial court terminated respondent's parental rights at the best-interest hearing, the court stated:

> [Respondent's] reaction, denying accountability for her role in the crash suggest[s] she may not increase her safety practice *if this Court were to allow her to work towards reunification*. Her failure to recognize responsibility suggest[s] she does not understand her duty to keep her children safe, or what it takes to keep them safe. [Emphasis added.]

This statement contradicts the trial court's finding that "reasonable efforts were made." To the contrary, this statement indicates that no reunification efforts were offered or even permitted.

For its part, the DHHS argues that it made the following efforts prior to seeking termination: face-to-face interviews and follow-up with Children's Hospital of Michigan, coordination with law enforcement, interviews with family members, review of prior case files, and seeking relatives for placement. Assuming arguendo that these efforts are appropriate to the specific barriers facing the family, see *In re Hicks/Brown*, 500 Mich at 85-86, the DHHS's reunification efforts were still incomplete because there is no case service plan in the record. See *In re MJC*, 349 Mich App at 55.

Consequently, I would conclude that the trial court plainly erred by determining that reasonable efforts were made and terminating respondent's parental rights at initial disposition. In light of the accelerated proceedings, I would further conclude that this error affected the outcome of the proceedings, causing prejudice to respondent. See *In re Boshell/Shelton*, ___ Mich App at ___; slip op at 8 (reiterating that the erroneous deprivation of reasonable efforts toward reunification can seriously affect the fairness and integrity of child-protective proceedings).

For these reasons, I would reverse the order terminating respondent's parental rights and remand for further proceedings.

/s/ Allie Greenleaf Maldonado

---

(2022). In its original petition, the DHHS included an allegation of murder or attempted murder under MCL 712A.19b(3)(k), which constitutes an aggravated circumstance. See MCL 722.638(1)(a)(*vi*). But this allegation was removed from the amended petition, prior to the initial disposition, after respondent pleaded *nolo contendere* to involuntary manslaughter.